### NAGLEE v. MINTURN et al.

Pending proceedings for a dissolution between partners, and until a dissolution is finally declared, and a receiver appointed to make a *pro rata* distribution among creditors, the latter are not prevented from resorting to adverse proceedings; and when a creditor does so, he may gain a preference over other creditors.

Therefore a debtor of the partnership is justified in payment to the sheriff, on an execution held by such a creditor.

From the same principle it follows, that the debtor has a right to purchase cross-demands against the partnership, and to set them up as a defence to the debt due by him to the partnership.

APPEAL from the District Court of the Fourth Judicial District.

The defendant executed his note to James King of Wm. in 1854, which was afterwards assigned to Adams & Co. On the twenty-third of February, 1855, Alvin Adams filed his complaint against Woods and Haskell, for a dissolution. The substance of the complaint is stated in the cases of Adams & Co. v. Hackett & Casserly, January, 1857, and of Adams v. Woods and Haskell, July, 1857. At the commencement of the suit, Cohen was appointed receiver, in which capacity he acted until April, 1855, when the effects of Adams & Co. were passed to Roman, Cohen, and Jones, assignees in insolvency. The proceedings in Adams v. Woods & Haskell, were virtually suspended until the beginning of 1856, and until after the proceedings in insolvency were declared *coram non judice* and *void*. In the month of May, 1855,

Naglee v. Minturn.

after Cohen had ceased to act as receiver, Edward Seaman brought his action against Adams & Co., and garnisheed the amount of his debt in the hands of the defendant. Seaman obtained judgment against Adams & Co., in July, 1855, and execution thereon was issued, and defendant paid the amount of the execution to the sheriff. In the month of July, 1855, the defendant also became the owner of certain cross-demands against Adams & Co.; and the amount paid upon the execution, together with the amount of the cross-demands, are set up by the defendant as a complete defence to this action. In October, 1855, the plaintiff was appointed by the Court, receiver, in the place of A. A. Cohen, removed, and the note came into possession of plaintiff as such receiver. On the fourteenth of February, 1856, Gilbert A. Grant was appointed referee, to take an account of the debts due by Adams & Co., for the purpose of making a *pro rata* distribution among the creditors of the firm. And on the thirtieth of December, 1856, a decree of dissolution was rendered, and the receiver ordered to make a partial distribution of the funds. In the case now under review, the Court below gave judgment for the plaintiff, and the defendant appealed.

*E. W. F. Sloan* for Appellants.

It is certain that the defence set up by the appellants cannot be prejudiced by any proceedings in the case of Adams v. Woods and Haskell, subsequent to July, 1855, and I contend that no steps had been taken in that case which can render the defence invalid.

1. No bill, as to the copartners only, whatever may be its ostensible object, can be made to subserve the purpose of preventing a seizure of partnership property at the suit of partnership creditors.

2. As to the creditors of the firm, the partnership is a *unit*, possessing in legal contemplation a species of individuality. The copartnership and its property occupy the same relative position, in reference to firm-creditors, which the individual debtor and his property do in reference to his own creditors.

3. It cannot possibly be a matter of any importance to the creditors of a firm how the account stands as between the members of that firm; whether the balance is in favor or against one or other of them; or whether their respective shares in the capital stock are equal or unequal, are matters upon which the security of such creditors does not depend.

4. No subject-matter can be litigated in an action, as between the copartners only, so as to be binding upon or affect the right of creditors. The creditors can neither take notice of, nor interfere with such action; nor can they be prejudiced by any order, judgment, or decree, made therein. Any injunction in such case restraining the independent action of creditors would be an

anomalous proceeding; and the appointment of a receiver for the like purpose and with the like effect, would be equally so.

5. Each firm-creditor has a perfect right to proceed, by attachment, execution or otherwise, as he may be advised, for the enforcement of his demand against the copartnership property, in like manner as the creditor of an individual debtor may proceed against his property.

Adams & Co., however, did not, and could not, assign by deed to a trustee for the general benefit of creditors. That common law power was taken away by the Insolvent Act. See Comp. Laws, p. 322, § 29 ; see, also, Cheever *v.* Hays, 3 Cal. Rep., 471. ʼ

Neither could they make an assignment under that act, because they were excluded from the operation of its general provisions. They attempted to do so and failed. See the case of I. C. Woods et al. *v* Barrett.

The leading case of Waring *v.* Robinson, 1 Hoffman, Ch. R. 531, fully maintains the doctrine I contend for.

I contend, in the second place, that the cross-demands amounting to the sum of four hundred and ninety-five dollars, as set up in the answer of the appellant Minturn, constituted a perfectly good offset to the demand of the plaintiff, at least to the extent of the sum mentioned.

This, I insist, must be so, for the reasons hereinbefore stated.

These cross-demands are admitted to be genuine subsisting demands, as against Adams & Co.; and that they were acquired by Minturn, in July, 1855.

The attempted proceedings of Adams & Co., under the Insolvent Act, as has been stated, were all *coram non judice* and void. The assignees therein appointed were not vested with a title to the property, choses in action, or effects of that firm. The note here sued on, continued to be the property of Adams & Co., and the demands then acquired by Minturn, were against Adams & Co. These demands, were, therefore, mutual, and no subsequent transfer of the promissory note to the plaintiff, as receiver, can change the character of the offset, or take away the right of Minturn to set it up in defence of the action. Johnson *v.* Bloodgood, 1 J. Cas., 51 ; Dickson *v.* Evans, 6 T. R., 59.

The recent decision of the Supreme Court, in the case of Adams & Co. *v.* Casserly & Hackett, is an authority directly in point, and must be regarded as conclusive upon the questions made in this case.

*Stow & Brown* for Respondent.

As a general rule, it is true that the creditors of a partnership have no interest in a partnership suit until after a decree of dissolution, and that in the mean time one creditor may proceed against the partners, and get an advantage, if he can. The reason of this is, that until a decree of dissolution, *non constat*

that the partnership is insolvent, or that the Court will meddle
with its affairs, either for account of the complaining partner or
the creditor; and at such a stage of the proceedings, the creditors
having no interest in the suit, and not being parties to it, have
each of them the obvious right to sue for his own account.
That, however, is not this case; for here we have not only the
plaintiff, Adams, but the defendants, Haskell and Woods, on the
day of the suit brought, consenting to close their business—to put
their assets into the hands of the Court, out of their own power,
for the purpose of closing the partnership concerns, and paying
the partnership debts. From the moment, therefore, that the
consent was filed, the dominion of the partners over the partner-
ship assets was voluntarily surrendered, and the rights of the
creditors in the assets attached. See the reasoning in Waring *v.*
Robinson, 1 Hoffman's Ch. R., 531, 532, which is fully approved
and adopted by Judge Burnett, in the case of Adams, per Receiver,
*v.* Hackett & Casserly, January Term, 1857.

If we are correct, and have been successful in maintaining our
proposition, then we say:

That the counter-claims are not a good set-off against the note,
and should be excluded, because—

1. Minturn could not avail himself of demands against Adams
& Co., purchased after the note had vested in the receiver.

2. It devolved upon the defendant to show that his counter-
claim was owned by him, prior to the appointment of a receiver.

After the twenty-third day of February, 1855, Minturn was no
longer indebted to Adams & Co., but to the creditors of Adams
& Co.; and the whole design of winding up an estate in chancery
would be defeated if the delinquent debtor could avail himself of
demands subsequently purchased in a depressed market, and
thus liquidate his obligations.

Among the early cases on this point is Dickson *v.* Evans, 6
Term R., p. 57, and the principle underlying this case is, that
the debtor of a bankrupt shall not be allowed to profit by the
bankruptcy to the prejudice of creditors.

We can see no distinction in principle between the case of a
bankrupt, and the condition of affairs of Adams & Co. In both
cases the estate is cast upon a trustee for the benefit of creditors,
for a *pro rata* distribution. One is called an assignee, and the
other a receiver; but the office of each is the same, so far as the
estate and the creditors thereof are concerned. Ogden *v.* Cowly,
2 John. R., 273, is another case in point.

Again: demands to be set-off must be due to and from the
same person, and in the same right. Miller *v.* the Rec. of the F.
Bank, 1 Paige, 445; Hill *v.* Tallman's Ex., 21 Wend., 674; 2
Paige, 406; Johnson *v.* Bloodgood, 1 John. Cases, 51.

The rights of Adams & Co. in the note were gone; had passed
by their own act and the order of the Court to the receiver.

Now, Minturn has no demands against the receiver, nor against the creditors of Adams & Co.; and the character of debtor and creditor has not existed between Minturn and Adams & Co. since February 23, 1855. No party, save the receiver, or the representative of the creditors of Adams & Co. could have maintained an action against the defendant since that time. Minturn owes this debt to the creditors, not to Adams & Co. This must be conclusive of the question of set-off. But—

3. It devolved upon the defendant to show that his demands were owned by him prior to the appointment of a receiver. 6 Term R., 57; 2 John. R., 273, above cited.

The proceedings of Seaman *v.* Adams & Co., in the Superior Court, under which defendant was garnished, were null and void, and afforded no protection to Minturn.

We shall be met with the position that Minturn was garnished in the suit of Seaman *v.* Adams & Co., in the Superior Court. In anticipation of this, we say that the attachment having been made after the appointment of a receiver, the debt was not the subject of attachment. Adams *v.* Haskell and Woods, January Term Sup. Court, 1856.

Burnett, J., delivered the opinion of the Court—Field, J., concurring.

The only point which seems material in this case, is whether Seaman could gain a preference over other creditors by his superior diligence. In the case of Adams & Co. *v.* Hackett & Casserly, we said, "that until a dissolution has been judicially declared, and a receiver ordered to make a *pro rata* distribution of the partnership assets among the creditors, they are not prevented from resorting to adverse proceedings; and that when a creditor does resort to such proceedings, he may thereby gain a preference over those creditors who are less diligent." The conclusions arrived at in this opinion, were adopted by this Court, in the subsequent case of Adams *v.* Woods & Haskell.

The present case seems clearly to fall within the principles settled by those cases. Seaman, by his diligence, gained a priority over other creditors, and was entitled to be first paid, and the defendant Minturn was justified in the payment he made to the sheriff. From the same principle, it follows, that Minturn had the right to purchase the cross-demands. The owners of these cross-demands had the right to have gained a priority over other creditors by suit; and they had the right to sell to Minturn, who was a debtor to Adams & Co., and not to the creditors of that firm. At the time the purchase was made, no decree of dissolution had taken place—the proceedings were virtually suspended, and the creditors acquired no equitable lien upon the fund. As the owners of these cross-demands could gain priority by suit, there was no propriety or justice in compelling them to

resort.to legal proceedings, when they could sell their claims to a debtor of the firm.

The Court below should have allowed the defendant credit for the payment made by him upon the execution, and also for the amount of the cross-demands.

Judgment reversed, and cause remanded, for further proceedings.