SCHLOSS v. SCHLOSS et al.

(Supreme Court, Appellate Division, First Department. February 12, 1897.)

RECEIVERS—LEVY OF ASSETS IN THE HANDS OF.

Leave will be granted to levy an execution on assets in the hands of the receiver of the execution debtors appointed in an action to dissolve a partnership between them, where the partnership was solvent when the action for dissolution was commenced.

Appeal from special term, New York county.

Action by William Schloss against Henry W. Schloss and others and Morris Adler for dissolution of a partnership and an accounting. Application by Morris Adler, a judgment creditor of Schloss & Sons, defendants, for an order permitting a levy on assets of said Schloss & Sons in the hands of a receiver. From an order denying the motion, defendant Morris Adler appeals. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

Ira Leo Bamberger, for appellant.
Eugene Van Schaick and Elliot Norton, for respondent.

RUMSEY, J. The facts in this case do not differ materially from those which were made to appear in Re Thompson, 10 App. Div. 40, 41 N. Y. Supp. 740, which was an application by a judgment creditor of these same parties for the same relief which is here asked. We concluded, upon a careful examination of the facts in that case, that, as a matter of fact, they did not show insolvency on the part of the firm of Schloss & Sons, and that the judgment creditor should be permitted to collect his debt in

the same manner as other judgment creditors of other debtors. In view of the fact that this motion was denied by the learned judge at special term after a like motion had been granted by this court in Re Thompson, we have examined the affidavits in this case with great particularity, for the purpose of satisfying ourselves whether, upon all the facts, it has been shown that the firm of Schloss & Sons was insolvent; and, as a result of that examination, we reach now the same conclusion which we reached before,—that no such condition of affairs is shown as would warrant a holding that the firm was insolvent, so as to refuse to a diligent creditor the right to collect his debt. The decision in Re Thompson, supra, therefore controls this case, and requires the reversal of this order and the granting of the motion.

We have been referred, upon the argument of this motion, to the case of Myers v. Myers (cited at the special term) 43 N. Y. Supp. 737. The rule laid down in that case does not differ from the Case of Thompson, and it proceeds entirely upon the ground that in the particular case the judgment debtors were insolvent and that the court was at liberty, in view of all the facts, to devote their property to the satisfaction of their debts pro rata among all their creditors. That is not the case here, and for that reason the case of Myers v. Myers does not apply. It was said in Re Thompson, supra, that, if it had appeared that Schloss & Sons were insolvent, it would have been good ground for denying the motion. It was not thought necessary in that case to go further than to examine the facts bearing upon the question of insolvency, because the conclusion reached upon those facts required the reversal of the order of the special term. For that reason no examination was made of the question whether, under all the circumstances, the mere fact of insolvency would be sufficient to warrant the denial of a motion like this, and it must not be understood from what was said in that case that insolvency is always, and under all circumstances, a perfect defense to such a motion. If it can be seen in any given case that a receiver has been appointed in an action actually pending for the purpose of winding up the affairs of the concern as rapidly as may be, so that the creditors may as quickly as possible be paid that which they are entitled to, those facts might be sufficient to induce the court to refuse to grant such relief to a judgment creditor as is asked for here, however much the court might disapprove of the practice which puts failing estates in the hands of a receiver to distribute under the control of the court, rather than in the hands of an assignee for the benefit of creditors. But that is not this case. It appears that the receiver was appointed in this case on the 20th of April, 1896. The action was brought, as is alleged, after the dissolution of the partnership, for the purpose of having the affairs of the partnership wound up. The receiver was appointed upon an agreement of all the partners. He was directed, in the order appointing him, to proceed and carry on the business, and was given all the powers necessary to enable him to carry on the business in precisely the same way as though it were car-

ried on by the partners themselves. This, as it appears, he pro-
ceeded to do. From the time that he was appointed, he devoted
himself to an effort to induce the creditors to compound their
debts and extend the time of payment, and to consent to the or-
ganization of a corporation which should take possession of the
assets of the firm of Schloss & Sons for the purpose of preserving
them to the parties and extending the time of payment of their
liabilities. In his effort to do this, he contested every application
made by creditors for the purpose of getting a lien upon the es-
tate; having apparently the intention of compelling the creditors
to consent to receive their pay in the manner and proportions
considered by him to be for the best interests of the debtors, rath-
er than to permit them to get their money when it was due, as
they were entitled to do.

This case illustrates the evils which may result from permitting
a receiver to carry on the business which was pursued by the own-
ers of the property before he was appointed. This receiver, as
was said in Re Thompson, supra, was merely the agent of the firm.
He was appointed as such by the court, and was to some extent
under the control of the court; but the title to the property never
vested in him, and his appointment caused but one substantial
change in the nature of the business and the condition of affairs.
That change was that the business could thereafter be conducted
with perfect and entire freedom from any danger that creditors
could compel the payment of their debts. However pressed the
creditors might be for money, however honest their claims, and
however long due those claims may have been, these parties, by
the help of the court through their own selected agent, were able
to carry on their business precisely as it had been carried on be-
fore, just so long as they wanted to. Receivers are not appointed
for any such purpose. It is their duty to close out as rapidly
as possible the business which they take, to reduce the assets to
money, and to satisfy the creditors. If other duties are imposed
upon them, there at once arises grave danger of impropriety. In
the nature of things, the courts are not fitted for the conduct of
business. They are not created for that purpose, and while there
may be cases in which it is necessary, for a short time, to con-
tinue a business until it can be closed out, those cases are rare,
and orders to that effect should be made, not only with reluctance,
but never when it can be avoided. Such orders should never be
made which give to the receiver the power, at his own will, to
carry on the business indefinitely for the purpose of forcing a set-
tlement or bringing about a compromise with creditors. Justifi-
cation for such orders can only exist when it appears that the con-
duct of the business for a short time, having in view the closing
of it out as quickly as possible, is absolutely necessary to prevent
loss. Nothing of that sort was pretended here. The business
was to be carried on precisely as it had been, and the receiver
was vested with power to make unlimited purchases of new ma-
terial, to pay all the expense of the business precisely as it had
been paid by the firm, and there was no limit to his power, except

the further order of the court, which, in view of the fact that this was an amicable suit, and that all the parties to it had an interest in carrying on the business and keeping off their creditors, was not at all likely to be made so long as the receiver could make his administration profitable to them. There are some few cases in which it is absolutely necessary that the business of a corporation, and possibly of a firm, may be continued pending its dissolution or winding up; but such cases are exceedingly rare, and such orders ought never to be made, except where an imperative necessity appears, and never should they be made in an amicable suit like this, to which there is no party who has an interest in requiring the assets of the firm to be devoted to the payment of its debts as quickly as may be. If these parties were solvent, as it is fair to infer they held themselves out to be, then surely there was no reason why their debts should not be paid as they came due. If they were insolvent, as they claim, still there was no reason why they should be permitted to resort to the process of the court to hinder and delay their creditors in the collection of their debts, any more than they should be permitted to reach that end by any other device. The law forbids any transfer of property with intent to hinder or delay creditors, and it makes no difference whether that transfer is inter partes, or whether, for the purpose of giving it greater apparent weight, debtors resort by agreement to the courts, and stipulate for the entry of an order which shall have the same effect as any other fraudulent transfer. In all such cases the court will look beyond the form of the transaction, and see what may be its necessary effect; and, if that is to accomplish an end which is not permitted, the court will not be a party to it, even though it might, in the end, by indirect methods, accomplish a rude sort of justice. It appears by the reported cases that this is not the first time that such a ruse has been resorted to to hold creditors at arm's length until it became convenient for debtors to pay; and we agree with what was said by the courts in those cases, that if it had appeared that the intention was not to wind up the affairs of the debtor with the greatest possible speed, but to continue the business for his benefit, there is no reason for forbidding a creditor to levy precisely as though no receiver had been appointed. Halpin v. Brewing Co., 91 Hun, 220, 36 N. Y. Supp. 151; Duncan v. Treadwell Co., 82 Hun, 376, 31 N. Y. Supp. 340. If this firm was solvent, and desired to protect all their creditors alike, it was their duty to make an assignment for the benefit of creditors, and not to resort to the present means, which only serves to hold creditors at bay, without giving the court an opportunity to take the fund into its own hands and turn it to the purpose for which the law says it ought to be devoted.

For these reasons, even if we were satisfied—which we are not—that this firm was insolvent, we should not deem this a proper case to turn away a diligent creditor, who seeks that which the law entitles him to have, so that it might be put in the power of

the parties to hinder the payment of all the creditors so long as·
their own interest might seem to require.

The order must be reversed, with $10 costs and disbursements,·
and the motion granted, with $10 costs.　All concur (INGRAHAM,
J., not voting).