LOUIS HAMMER

*v.*

EMMA ISRAEL.

[Decided February 6th, 1919.]

1. The law, when justice requires, takes cognizance of parts of days. *Gallagher* v. *True American Pub. Co., 75 N. J. Eq. 171*, followed.

2. In proceedings instituted in this court for the winding up of a partnership, alleged to be insolvent, after the granting of an order to show cause why a receiver should not be appointed, and the appointment of a

temporary receiver, though before final decree of dissolution, creditors may not, either by judgments subsequently obtained and issuance of execution and levy, or by issuance of execution and levy on judgments obtained prior to the award of the order to show cause and appointment of temporary receiver, acquire preferences. *Ross* v. *Titsworth*, *37 N. J. Eq. 333*, distinguished.

3. The rights of creditors to an equitable distribution of the assets of an insolvent partnership arises at least upon the property being taken over by a temporary receiver with a view to ultimate distribution, and after such a taking over liens cannot be obtained through legal proceedings.

4. In proceedings to wind up the affairs of a partnership, creditors will be permitted to make levies so that, in case of a discontinuance of the suit, or for any other reason, the assets of the partnership are not distributed as the result of the suit, their legal rights will be protected.

5. If it appears in proceedings to wind up a partnership that the partnership is solvent, or that the proceedings are not being taken in good faith with a view to ultimate distribution of assets amongst creditors and those entitled thereto, the court may permit judgment creditors to proceed with their legal remedies.

6. In this state priorities of judgment creditors in distribution of assets are regulated by statute, and if there be no statute, there is no priority.

7. Section 1 of an act for winding up voluntary associations, and associations with partnership liabilities (*3 Comp. Stat. p. 3924*), does not apply to the winding up of ordinary partnerships.

8. Judgment creditors are preferred in the distribution of the assets of an insolvent corporation only so far as they may have acquired liens on the property of the insolvent corporation prior to the court taking control of the property for administration. *Doane* v. *Millville Mutual Insurance Co., 45 N. J. Eq. 274.*

---

On bill.   On application of judgment creditors for payment, &c.

*Messrs. Bilder & Bilder (Mr. Kaufman)*, for the judgment creditors.

*Messrs. Furst & Furst (Mr. George Furst)*, for the receiver.

LANE, V. C.

Petitioners obtained a judgment in the district court of Newark at ten A. M., October 25th, 1918, against Hammer and Israel, partners, trading as the Fandi Shop; on October 25th,

some time prior to nine forty-five A. M., a bill was filed in this court by Hammer against Israel alleging insolvency of the partnership, differences between the partners, discontinuance of the business, and praying for an accounting, the appointment of a receiver, the reduction of the assets to cash, the discharge of the liabilities and a dissolution; upon the filing of the bill an order to show cause was made, which order contained the following provision:

"Ordered, that Homer C. Zink, Esq., be and he is hereby appointed temporary receiver pending the return of this order to show cause, to take charge of the property, estate, books and papers of the said copartnership business;"

the bill and order were marked filed by the vice-chancellor and the order therefore became immediately effective under rule 130; at ten A. M., on October 25th, the receiver went into possession of the partnership property; at ten-fifteen A. M. an execution was issued upon the judgment of petitioners and delivered to the constable of the district court, who at ten tweny-five A. M. proceeded to the shop of the partnership and found the receiver in possession; the constable went through the form of making a levy; on the return of the order to show cause in this court on November 7th, Homer C. Zink was appointed receiver with full power to reduce to cash the assets of the partnership; to institute suits, to compromise with creditors, sell and convey all of the estate, rights and interests of the partnership and to hold and dispose of the proceeds thereof under the direction of this court; under order of this court, the receiver has disposed of all the partnership assets, free and clear of any pretended lien of petitioners.

The present application is for an order directing the receiver to pay to petitioners the amount of their judgment. No decree of dissolution has yet been made, although an order has been made directing creditors to present claims, and claims have been presented. The time prescribed by the order for the presentation of claims has expired. The cause is proceeding with due speed; the delay in obtaining the formal decree of dissolution is due to the fact that the partner Israel is a non-resident and must,

under the present practice, be proceeded against by publication. (Practice changed by laws of 1919.)

The first question to be determined is whether the judgment creditor could, after the appointment of the receiver and his taking possession, proceed upon his judgment, obtained after the filing of the bill but before possession was taken by the receiver, by execution, and acquire a preferential right in the assets of the partnership. The law, when justice requires, takes cognizance of parts of days. *Gallagher* v. *True American Pub. Co., 75 N. J. Eq. 171.* It is argued that upon the doctrine of *stare decisis* this court is concluded by the decision of Chancellor Runyon in *Ross* v. *Titsworth, 37 N. J. Eq. 333.* In that case a bill was filed by one copartner against another praying that an account might be taken of the partnership affairs, that a receiver might be appointed to take charge of the partnership matters under the direction of the court and for general relief. A receiver was appointed with full power to reduce the partnership assets to his possession and to take charge of the partnership matters under the direction of the court. Subsequent to the appointment of the receiver, judgments were recovered against the partnership, and applications were made by the judgment creditors for payment out of the partnership assets. No decree of dissolution had been entered, although the bill had been filed January 9th, 1883, and the decision of the case was during the October term of court, 1883. The chancellor based his conclusion upon the fact that up to the decree of dissolution the proceedings were within the control of the parties, and the suit might at any time be discontinued, and that therefore it could not be said that the court had taken over the administration of the affairs of the partnership so that diligent creditors might not pursue their remedies at law. At the time of the decision there appeared to be two divergent views taken by the courts of two other states, one represented by the cases of *Adams* v. *Hackett, 7 Cal. 187; Adams* v. *Wood, 8 Cal. 153; 9 Cal. 24; Nagle* v. *Minturn, 8 Cal. 540,* and the other by *Holmes* v. *McDowell, 15 Hun 585;* affirmed by the court of appeals of New York (*76 N. Y. 596*) on the prevailing opinion of the court below. The chancellor adopted the rule he considered had been applied by the California courts and

which was contended for by Learned, presiding justice of the
appellate division, in dissenting in *Holmes* v. *McDowell.* The
law with respect to the subject was in an evolutionary stage. I
think all of the cases that had been decided were cited by the
chancellor. The New York court considered that after proceed-
ings had been instituted in a court of equity which would in all
probability result in a taking over of the assets of a partnership
for distribution amongst creditors it was unfair that creditors
should be permitted to secure preferences amongst themselves;
that the maxim "equality is equity" ought to be applied. The
evil feared by the California court and by the chancellor which
might be the result of the adoption of the New York rule was
that the cause being one, up to the point of a decree of dissolu-
tion, strictly between the parties, it might at any time be discon-
tinued without leave of court, and the partners would be enabled
by such a proceeding, if the hands of creditors in the meantime
were stayed, to secure what would be tantamount to a morato-
rium—a very real evil as I attempted to point out in *Hitchcock*
v. *American Pipe and Construction Co., 89 N. J. Eq. 440,* in con-
sidering the practice of certain of the federal courts in permit-
ting solvent corporations to seek the aid of the federal courts for
a like purpose. (And in this connection my criticism of the
federal practice was not so much directed to a taking over by the
court of a solvent but embarrassed corporation with the view of
ultimately liquidating all debts, but rather to the procedure
which made no provision for notice to creditors, deprived them
of their remedy at law, gave them no substitute remedy and
which might result in preferences. I have no quarrel with the
theory that assets of an insolvent corporation, partnership or in-
dividual should be treated as a trust fund for the protection of
creditors *pro rata,* nor do I question but that equitably the theory
can be extended over assets of a solvent person, natural or arti-
ficial. It is a fact that, in reality, a debtor holds equitably in
his own right only the excess of his assets over liabilities. The
rest he holds as trustee for his creditors. Starting with the
common law idea that debt was so personal as to warrant im-
prisonment the law now recognizes assets apart from the indi-
vidual as the real debtor. Such is the effect of the Bankrupt

law. This idea can be extended too far. If courts are to be permitted to take over the administration of solvent but embarrassed estates upon the trust fund theory, it must be with safeguards as to the rights of creditors not yet formulated.) No middle course seems to have suggested itself to the chancellor. In New York it appears that the result anticipated by Mr. Justice Learned and the chancellor actually occurred, and the New York rule finally has become settled, through a course of judicial decisions, that where the partnership is solvent, or where it appears that the proceeding is not being conducted in good faith, looking toward the ultimate distribution of the assets amongst creditors, judgment creditors may, by leave of court, be permitted to proceed to realize upon partnership assets. *In re Thompson (Appellate Division, First Department, 1896), 41 N. Y. Supp. 740.* In that case the appellate division permitted a judgment creditor to levy on assets of a solvent partnership in the hands of a receiver. Mr. Justice Rumsey, after stating that the receiver being in control of the property, it could not be interfered with without permission of the court, said: "If the partnership had been insolvent, there is no doubt that the court would not have permitted any creditor to levy upon the property for the purpose of securing a prior lien, but it would have held the assets to be divided equally among the creditors, because in such a case as that equality is equity. The reason is that, where the assets are not sufficient to pay all the debts, it would be manifestly unjust to permit any creditor, not having a lien by contract, to take sufficient of the assets to pay his own debt in full, and thereby deprive other creditors of the right to share *pro rata* in the property of the firm for the payment of their debts." Referring to the case of *Holmes* v. *McDowell* he said: "But the order in that case was put solely upon the ground that the firm was insolvent, and that it would be unjust to permit one person to acquire a lien upon the property to the prejudice of others equally deserving." *Schloss* v. *Schloss (Appellate Division, First Department), 43 N. Y. Supp. 788,* in which case the court said: "It appears by the reported cases that this is not the first time that such a ruse has been resorted to to hold creditors at arm's length until it became convenient for debtors to pay; and

we agree with what was said by the courts in those cases, that if it had appeared that the intention was not to wind up the affairs of the debtor with the greatest possible speed, but to continue the business for his benefit, there is no reason for forbidding a creditor to levy precisely as though no receiver had been appointed." In 1913, in *Abrahams* v. *Beneke, 140 N. Y. Supp. 753,* the appellate division of the first department reiterated the rule laid down in the cases heretofore cited. The rule also has the approval of the circuit court of the United States for the southern district of New York. *Paterson* v. *Paterson, 182 Fed. Rep. 953.* In *Myers* v. *Myers, 43 N. Y. Supp. 737,* Mr. Justice Beekman said, at special term: "The point made that the action is under the control of the partners, who may at any time discontinue it, is sufficiently answered in *Holmes* v. *McDowell, supra;* and, at any rate, if there should be a reasonable apprehension that any such thing might be attempted, it could be guarded against, as was suggested in *White* v. *Frankel, 33 N. Y. Supp. 1,* by an application on the part of a creditor to be made a party to the action, which, doubtless, in such a case, the court would grant." This was affirmed by the appellate division (*44 N. Y. Supp. 513*) with an opinion which did not criticise the language of Mr. Justice Beekman.

The rule in New York, as now formulated, secures an equitable distribution of the assets of an insolvent partnership, but prevents the partners invoking the aid of the court to protect the assets of a solvent partnership, or of an insolvent partnership for fraudulent purposes. It is significant that the result has been reached in New York through the decisions of appellate tribunals, inferior to the court of appeals, which had decided *Holmes* v. *McDowell.* It was recognized by the New York courts that at the time of the decision of that case the court was feeling its way, and that the determination should be considered as binding authority only in cases in which the facts were similar to those there dealt with.

A consideration of the California cases referred to by the chancellor in *Ross* v. *Titsworth* will indicate, as pointed out by the supreme court of Oklahoma, 1903 (*Foster* v. *Field, 74 Pac. Rep. 190*), that the California court did not go to the length of hold-

ing that, after the appointment of a receiver of an insolvent co-partnership before decree of dissolution, while the proceedings are, however, being carried on in good faith, liens may be acquired by creditors. The court said: "And again it will be observed that in the California cases cited it seems to have been conceded that, if the partnership had been insolvent, then the rights of creditors, as of necessity, in equity, would attach." It was also pointed out that the California cases were based largely on the statutes of that state. The California cases were considered in 1885 by the supreme court of Illinois, and distinguished upon grounds indicated by the Oklahoma court. *Ross* v. *Titsworth* was considered, as was *Elliott* v. *United States Insurance Co., 7 Gill. 307.* It was pointed out that the *Elliott Case* went upon the ground that the orders made did not state the ulterior intent of the court to make an equitable distribution of the fund.

Unless *Ross* v. *Titsworth* be considered as authority, I have yet to find a case holding squarely that, after an appointment of a temporary receiver of an insolvent partnership, before decree of dissolution, while the proceedings are being carried forward with due speed and in good faith, creditors may acquire liens. In England the rights of creditors are protected by what is known as a charging order. *Kewney* v. *Attrill (1886), 34 L. Rep. Ch. Div. 345; Ridd* v. *Thorne (1902), 2 L. Rep. Ch. Div. 344.* Mr. Justice Kay, in *Kewney* v. *Attrill,* said: "I give the applicants, the judgment creditors, a charge now on the moneys which are in the hands of or may be taken possession of by the receiver, and they must undertake to deal with the charge according to the order of the court." He had said: "By the appointment of a receiver the court aims at equality amongst the creditors. If I give you leave it must be on your undertaking to hold the proceeds and deal with them in accordance with any order the court may make." There had been a decree of dissolution. The purpose of the action of the court was that if, for any reason, the administration of the estate should be taken away from that court, such as by an act of bankruptcy, the creditors might have, in the bankruptcy proceedings, the same advantage as they would have if they had levied an execution. I find no English au-

thority drawing a distinction between the rights of creditors as against property in the possession of a receiver appointed before dissolution and one appointed after. In *Helmore* v. *Smith, 35 Ch. Div. 449,* it was held in a case where the court of appeals had ordered the appointment of a temporary receiver pending appeal from an order of dissolution and appointing a receiver that a libel on the business conducted by the receiver and manager was a contempt of court and might be punished by committal indicating quite clearly that the receiver was something more than a mere agent of the parties.

The rights of diligent creditors may be protected by permitting them to levy but not to sell. The receiver may then be directed to sell free of the lien or charge of the levy, the lien, if any, to attach to the proceeds, the levy to give the creditor no prior right in case the assets are distributed as a result of the then pending proceeding, but in case the assets are turned back to the partners, either because of discontinuance of the suit, or for other reasons, the levy to be as effective as if a receiver had never been appointed. Whether the same result may be obtained by a charging order, as in the English practice, I do not determine. By this method an equitable distribution of the assets of the partnership taken initially for that purpose under the control of the court by the appointment of the temporary receiver will be achieved, and yet the partners will not be permitted to invoke the rule fraudulently to the disadvantage of creditors.

The result may be worked out upon the doctrine of relation. The supreme court of the United States held in *Bailey* v. *Baker Ice Machine Co., 239 U. S. 268,* that a trustee in bankruptcy takes the status of a creditor holding a lien by legal or equitable process as of the date of the filing of the petition in bankruptcy, although there is no express provision in the act to that effect. Judge Rellstab *(In the Matter of the Capital City Cap Co. (United States District Court, District of New Jersey), 41 A. B. R. 604),* said: "It is not the passing of the title to the bankrupt's property, under section 70-A, but the passing of such property *gremio legis* for purposes of liquidation, which fixes the time when the trustee is regarded as having acquired the status of a lienholder under section 47."

The right of the receiver appointed after dissolution to avoid liens, claimed to be acquired by judgment creditors by judicial process, upon the partnership property, may be held to relate back to the time that the court first took the property into its possession through the medium of a temporary receiver. If, for any reason, the property is not distributed in the cause, and the receiver is discharged, liens acquired may be permitted to become effective.

It is elementary that when property is taken over by a court ffor distribution amongst creditors, the maxim "equality is equity" is to be applied, if possible. It is so with respect to corporations. In *Squire* v. *Princeton Lighting Co., 72 N. J. Eq. 883; 15 L. R. A. (N. S.) (1908) 657,* the court of errors and appeals, speaking through Mr. Justice Pitney, referring to *Doane* v. *Millville Mutual Insurance Co., 43 N. J. Eq. 522,* said: "With respect to Vice-Chancellor Bird's decision upon the point now raised, it is sufficient to say that if the order that he had under consideration did amount to a taking possession of the assets of the company by the court, his declaration that there was no longer opportunity for anyone to obtain advantage by diligence is correct." The court of errors and appeals held that the order to show cause containing the *ad interim* restraint, ordinarily granted in corporation cases, did not amount to a taking over of the property by the court, and that creditors might proceed to acquire liens, notwithstanding the order. It recognized, however, I think, that the court might take possession of the property, so that liens could not be acquired, otherwise than by the appointment of a receiver, and in order to comply with this decision in all cases hereafter in which I am called upon to advise orders and the facts warrant temporary restraint, but either do not warrant, or for some reason there is not desired, the appointment of a receiver, I shall incorporate in the order a provision that from the date of the service of the order the corporation, its agents and officers, shall hold its property as trustees under appointment of, and accountable to, the court, with leave to continue the business or such other powers or restrictions as may be appropriate.

Under the "Act concerning general assignments" (*1 Comp. Stat. p. 114*), after the making of a general assignment, liens cannot be acquired nor are judgments preferred in the distribution. In view of the fifteenth section of the act, page 119, *Wimpfheimer v. Perrine, 67 N. J. Eq. 597*, referred to by Vice-Chancellor Garrison in *Brockhurst* v. *Cox, 71 N. J. Eq. 708*, to the effect that a general assignee by voluntary assignment is not such a representative of creditors as to enable him to assert on their behalf the right of attacking the validity of an otherwise valid mortgage, no longer expresses the law of this state. The law in this regard is settled in *Watson* v. *Rowley* (*Vice-Chancellor Stevenson*), *63 N. J. Eq. 195*. In *Haston* v. *Castner, 31 N. J. Eq. 697*, the court of errors and appeals held that the statutory direction that the lands of a decedent shall be liable for the payment of his debts, created a lien in favor of creditors-at-large which gives them a right to impeach a conveyance made by the decedent in fraud of creditors. In *Currie* v. *Knight, 34 N. J. Eq. 485*, Vice-Chancellor VanFleet said that the provision of the statute that the assets of an insolvent estate shall be distributed ratably among the creditors of the decedent gives them a lien on such assets and entitles them to a standing to contest the validity of a chattel mortgage not filed according to the statute. It has been held that after a rule to limit creditors, but before adjudication of the insolvency of an estate, a judgment obtained against the representative will not be entitled to preference. *Ryan* v. *Van Arx, 46 N. J. Law 581*.

It seems to me that the right of creditors to an equitable distribution of the assets of an insolvent partnership arises, at least, upon the property being taken over by a temporary receiver with a view to ultimate distribution, and that after such a taking over, liens cannot be obtained through legal proceedings and that this is so notwithstanding the fact that the suit may be discontinued; that creditors, however, will be permitted to make levies, so that in case of discontinuance their legal rights will be protected, and that if it appears that the partnership is solvent, or that the proceedings are not being taken in good faith, the court may permit judgment creditors to proceed with their legal remedies. I think this view is supported by the great

weight of authority. *30 Cyc. tit. "Partnership"* §§ *2–8* (at *pp.*
*730, 731*); see also *Lind. Part.* (*7th ed.*) (at *p. 585*).

*Ross* v. *Titsworth* has not received the direct approval of the
court of errors and appeals. It is mentioned in *Brockhurst* v.
*Cox,* *71 N. J. Eq. 703; affirmed, 72 N. J. Eq. 950,* on the opin-
ion of this court, but the remarks made by Vice-Chancellor Gar-
rison (at *p. 709* of *71 N. J. Eq.*) were not necessary to the de-
termination of that case, and were more in the nature of a re-
cital than anything else. My conclusion is, in view of the sub-
sequent decisions and of the fact that a rule may be adopted
which will secure equality amongst creditors and yet not result
in the evil anticipated by the chancellor, that the determination
in *Ross* v. *Titsworth* must be confined to the facts in that case.
It there appeared that the proceedings had been unduly delayed,
no excuse was given for the delay, the result would have been
the same had the present New York doctrine been considered
as prevailing here. The chancellor said: "The bill prays no
dissolution. It does not expressly allege insolvency, though it
shows it."

I do not think that the court should tolerate a scramble for
priority after it has taken control of assets with a view to ulti-
mate distribution, but before it can be said that the assets are
irrevocably within its control, where the delay in getting such a
determination is due to a necessary delay in the service of pro-
cess and the bringing on of the case to trial. An argument
which would so result may be made with almost equal force in
the case of an insolvent corporation prior to adjudication; that
that argument would not prevail in such a case, I think, is clearly
indicated by *Squire* v. *Princeton Lighting Co., 72 N. J. Eq.
883.* If Mr. Justice Pitney had considered this the rule he would
have undoubtedly plainly so stated; on the other hand, he inti-
mates that if the order then under consideration, prior to ad-
judication, had amounted to a taking possession of the assets by
the court, there would have been no longer opportunity for any-
one to obtain advantage by diligence. After the award of an
order to show cause and the appointment of a temporary equity
receiver in a corporation case, before adjudication, there are
many contingencies which may result in the turning back of the

property to the corporation just as in a partnership case, after the appointment of the receiver, but before decree of dissolution, there are many contingencies which may result in the turning back of the property to the partnership. In each case I think it must be considered that the rights of creditors at large attach from the time the court first put its hands upon the property, if, in fact, the property never leaves the possession of the court, except through a decree of distribution amongst creditors. See the remarks of Vice-Chancellor Leaming in *Trustees of Sea Isle Realty Co.* v. *First National Bank, 99 Atl. Rep. 929; 87 N. J. Eq. 84,* in dealing with the situation of a dissolved corporation in the hands of trustees. He held that after dissolution no preferential liens could be acquired. It would seem that in these partnership cases a procedure should be adopted somewhat similar to the procedure in corporation cases. While it may be that constitutionally the right of a partner to a formal hearing at which he may be permitted to present proofs in open court cannot be taken away, yet it would seem that the order to show cause may require the respondent to answer to the merits within a reasonable space of time so that there may be a final hearing upon the return of the order to show cause. Whether this should be accomplished by statute or by a change in the rules may be a question. For an example of legislation which would accomplish the result, see *Langstaff* v. *Hurd (Connecticut Court of Appeals), 34 Atl. Rep. 91.* (Such procedure provided for by laws 1919.) The tendency to extend rather than limit the doctrine of relation. See note to *Squire* v. *Princeton Lighting Co., 15 L. R. A. (N. S.) 657,* and I am frank to say that I agree with the reasoning of Vice-Chancellor Bergen, now Mr. Justice Bergen, in the court of chancery in that case (*64 Atl. Rep. 474*), as did Mr. Justice Reed in the court of appeals. Mr. Justice Reed, after having served for a great many years on the supreme court bench, served for over a term in this court as vice-chancellor and then returned to the supreme court, and he was fully familiar from daily practice with the result of permitting creditors to acquire liens after the filing of the bill and the issuance of an order to show cause, but before the appointment of a receiver. The doctrine of relation

was invented merely as a means for the extension of equitable principles which it has come to be recognized should be applied in the administration of justices in cases of insolvent estates. The bankrupt laws require that all preferences acquired by legal process within four months of the filing of the petition are void. Equity abhors preferences as she does forfeitures. There is no equitable reason why creditors who happen to get a judgment and levy at a time when the corporation is insolvent but a short time prior to an adjudication should be preferred. The idea that a diligent creditor is entitled to profit by his diligence has, I think, been carried too far. I am not unmindful that equity favors diligence, but the diligence that equity favors is that which results in equity. The mere fact that one of a class of creditors secures a judgment gives him no special equity. Although in form a judgment, the debt is one of a class. My personal view is that our Corporation act should be amended to conform to the Bankrupt act with respect to preferences acquired by legal process. In case after case commenced in this court (I have two of them before me at the present time) I have seen creditors, who prefer the administration to remain here because of the more elastic procedure, forced, after the administration has been practically completed here, to take the matter to the federal courts in bankruptcy so that advantage may be taken of the provision voiding preferences acquired by legal process. There is no reason why the act should not be amended. It must be conceded now that the federal courts have jurisdiction in bankruptcy, notwithstanding that the estate is in process of administration in this court, and nothing can prevent creditors from going to that court so that judgment creditors cannot complain. If at any time the federal act is amended or repealed our act can be changed accordingly. By so doing we get the benefit of the provisions of the Bankrupt act plus the benefit of the sixty-fourth section of our statute which, in some respects, is much broader than any provision of the Bankrupt act. (Corporation act amended laws 1919.)

Is the judgment creditor entitled to any priority by reason of his judgment, irrespective of his proceedings under it? If I am right in my answer to the first query, then the judgment

creditor obtains no lien which can be enforced, if the assets are
distributed to the creditors in this case, by the issuance of his
execution and the levy thereunder. The District Court act, sec-
tion 198, revision of 1898 (*2 Comp. Stat. p. 2010*), provides
that a writ or execution shall bind the goods or property of the
person against whom the writ is sued for from the time it is
delivered to the constable, saving purchasers in good faith prior
to the actual levy of the execution, but in this case the execu-
tion was delivered to the constable and the levy made after the
receiver had actually taken possession. The priority of judg-
ments in the distribution of assets is regulated by statute. The
Corporation act provides, section 86 (*2 Comp. Stat. p. 1652*),
that the creditors shall be paid proportionately, excepting mort-
gage and judgment creditors, when the judgment has not been
by confession, &c. It is insisted that by virtue of section 1 of
an act for winding up voluntary associations, and associations
with partnership liabilities (*3 Comp. Stat. p. 3924*), the pro-
visions of the Corporation act, so far as applicable upon wind-
ing up proceedings, apply. But the act referred to does not ap-
ply to ordinary partnerships. It applies only to associations
where the partnership is so large and so secret as that actions
at law cannot safely be brought against them, and when becom-
ing insolvent the remedy at law is so uncertain and hazardous
as to amount to a failure of justice for want of an adequate
remedy. This clearly does not include the ordinary partnership
with which I am now dealing. But if it did, it would not help
the judgment creditor, for the court of errors and appeals has
held in *Doane* v. *Millville Mutual Insurance Co., 45 N. J. Eq.
274* (at *p. 282*), that judgment creditors are preferred only so
far as they have acquired liens. The act concerning general as-
signments, revision of 1899 (*1 Comp. Stat. p. 114*), by its first
section forbids the assignor making preferences, and by its
tenth and twelfth sections wages and rent are made the only
preferred debts. Prior to the act of 1899, assignors were per-
mitted to prefer certain classes of creditors, including judgment
creditors. Upon the distribution of insolvent estates of deceased
judgment creditors are, as a class, by statute, preferred.
*Koch. N. J. Prob. L. 528.* Proceedings to dissolve insolvent

partnerships and distribute assets have been likened to proceedings under general assignments. The rule in this court (rule 253) provides that the procedure should be as near as may be similar to procedure under the General Assignment act, unless the court by order otherwise direct. In practice, due to the cumbersome method provided by the Assignment act, the procedure generally adopted, by special order, is that provided for by the act concerning corporations. The tendency of legislation as indicated by the amendment of the Assignment act is towards equality amongst creditors. There being no statute upon which the judgment creditor can rest his claim of preference he has none. *Haines* v. *Price, 20 N. J. Law 480* (at *p. 483*), cited in *Second National Bank* v. *Blauvelt, 44 N. J. Eq.* (at *p. 177*).

I will advise an order denying the petition of the judgment creditor, but charging upon the moneys in the hands of the receiver, the proceeds of the sale of the property upon which the judgment creditor made his levy, a charge to the amount of the judgment creditor's debt, such charge to continue until the further order of the court; upon the appointment of a receiver in dissolution and the administration of the estate by this court, the charge will be discharged. I draw counsel's attention to the fact that it may be that the order directing creditors to come in and the order barring creditors are of no effect because made prior to the decree of dissolution and that the procedure may have to be gone through again after decree of dissolution.

No costs to either party.

Settle order on two days' notice.