WILLIAM A. STEVENS, attorney-general of the State of New
Jersey, complainant,

*v.*

JAMES J. WALLACE, JAMES J. WALLACE, trading as WALLACE
& COMPANY, ALFRED LEONARD, GEORGE CLAYTON and
GORDON F. ALLEN, defendants.

*Messrs. Platoff, Saperstein & Platoff,* for the claimants.

*Mr. Richard C. Plumer,* assistant attorney-general, for the
complainant.

THE RECEIVER.

These proceedings arise under the New Jersey Securities
act. *Pamph. L.* 1927, *ch.* 79, as amended and supplemented
in 1930. The bill of complaint was filed by the attorney-
general against the above-named defendants on October 10th,
1929, and simultaneously therewith an order to show cause
was issued and served, containing the usual injunctions and
restraints as to assets, &c.

On June 18th, 1930, a final decree was entered in the
cause adjudging all the defendants to be guilty of violating
the provisions of said act, in that "they and each of them,

jointly and severally, used and employed concealment, suppression, deception, misrepresentation and false pretenses in connection with the issuance, sale, offer for sale, promotion, &c., within this state, of securities and particularly of the capital stock of New Mexico Copper and Manganese Corporation."

On this same day, I was appointed receiver of all the defendants with all the powers conferred by the New Jersey Securities act.

Subsequently, I came into possession of a cash fund amounting to approximately $57,000. The usual order limiting creditors was entered and advertised pursuant to the terms thereof, in some sixty odd newspapers throughout the United States.

In due time, the claimant, Hudson Dispatch, Incorporated, filed with me its proof of claim alleging an indebtedness of $1,298.75 due from the defendant James J. Wallace, trading as Wallace & Company.

The proof of claim, in regular form, sets forth that the said sum is owing for some printing work performed for and on behalf of the said James J. Wallace trading as Wallace & Company, at his special instance and request, and at the agreed price. The claimant not only prays the allowance of its claim, but declares itself to be entitled to a preference over all other creditors, and that it has a prior lien on the fund in my hands because, on May 6th, 1930, it caused to be issued a writ of attachment out of the Hudson County Circuit Court against the defendant Wallace & Company for the recovery of the amount alleged to be due and pursuant to which, the sheriff levied upon the bank account of the said Wallace & Company, which has since been turned over to me, as receiver. The attachment suit is still pending.

At the outset, it must be noted that the matter *sub judice* does not involve the usual questions which arise in connection with the ordinary type of receivership administration. Indeed, this case happens to be the first and only receivership of individual defendants ever instituted in our courts since

the New Jersey Securities act was but recently enacted into law. The duties and powers of ordinary receiverships, having to do with bankrupt or insolvent persons, firms and corporations or even with solvent corporations (as distinguished from solvent or insolvent natural persons) decreed to be guilty of the fraudulent, illegal and prohibited practices defined by said Securities act, are uniformly to take into possession *all* the assets of the defendants, convert them into cash, and then, under the direction of the court, distribute the entire fund, *pro rata,* among *all* creditors who file their claims, with due regard, of course, to the legal priorities of the various classes of creditors as established by law.

In the present instance, however, all of the defendants are individuals, and the language of the act (section 6a of the supplement—*P. L. 1930 ch. 51*) unquestionably limits the powers, duties and even the jurisdiction of receivers appointed by the court in cases where the defendants are natural persons and not corporations. This section provides:

"Whenever the court of chancery shall issue any injunction * * * against a person, partnership, &c., * * * it may appoint a receiver with power to sue for, collect, receive and take into his possession all the goods and chattels, rights and credits, moneys and effects * * * and property of every description, *derived by means of any practice declared to be illegal and prohibited* by the act to which this act is a supplement, including also all property with which such property has been mingled, if such property cannot be identified in kind, because of such commingling * * * and hold and dispose of the proceeds thereof, under the direction of the court of chancery, *for the equal benefit of all who establish an interest therein by reason of the use and employment by the defendant of any practices herein declared to be illegal and prohibited* * * *."

The receiver being limited to such assets as were illegally *derived,* it is quite manifest that what the legislature had in mind was to provide some measure of relief and redress in favor of only those who had been cheated by the fraudulent sale of "fake" securities.

Indeed, section 7 of this same supplement provides:

"In any proceedings instituted by the attorney-general in the court of chancery for the purpose of carrying into effect the provisions of the act, the said court of chancery shall be and hereby is empowered to make all such orders or decrees as may be necssary * * * to *restore* or distribute to persons in interest any moneys or property, real or personal, which have been acquired by such person, partner-ship * * * by means of any practice declared to be illegal and prohibited by the act * * *."

No attempt is made by the statute, in cases where the defendant is a natural person, to place in the custody of the court through the appointment of a receiver *all* of the defendants' property, including their general assets. On the contrary, all that is given to the receiver to administer in cases arising under this paragraph or section of the statute is that portion of the defendants' property and effects which have been derived by the violation of the act. A separate and distinct section of the statute, 6b, is devoted to defining the procedure in cases where the defendant is a corporation, and it is therein provided that "the receiver thus appointed shall settle the estate and distribute the assets and have all the powers and may exercise all the duties conferred upon receivers by the provisions of an act entitled "An act concerning corporations" (Revision of 1896), approved, &c., &c.

It may be said, therefore, that this is a *special receivership*. As such special receiver of the individual defendants' special property, I have no jurisdiction or dominion over the *general estates* of the defendants, and it therefore follows as a logical sequence that I am not to be concerned with their *general creditors*.

The claim of the Hudson Dispatch, Incorporated, for printing, clearly seems to be based upon a debt which arose *ex contractu*. No provision is made in the act for their relief. The only class of creditors contemplated by the Securities act are those which arise and are declared to be *ex delicto*.

All creditors whose claims arise *ex contractu* still have an adequate remedy at law. These may, notwithstanding the statute, institute suit against the respective debtor-defendants and it may well be that after the entry of judgment and issuance of execution, such debts can be satisfied out of the

defendants' general and personal estates and individual assets over which I have or can acquire neither jurisdiction nor control.

It is insisted, however, that because the claimant acted diligently and caused a writ of attachment to be issued against the Wallace money some weeks before the actual appointment of the receiver, a lien has resulted in its favor paramount to the rights of other creditors. Aside from the provisions of section 86d of the General Corporation act, which provide that the title and right of a receiver appointed under that act shall be held for the purpose of avoiding liens and preferences, to relate back to the time of the filing of the bill, there are other considerations which make this contention of the claimant untenable. The actual and practical operation of the Securities act is still in an evolutionary stage.

Some seven months prior to the issuance of the attachment writ, this court intervened and virtually took control of all the Wallace & Company assets by the issuance of its restraining order and injunction. The particular fund levied upon by the writ was, therefore, already in *custodia legis.* A similar question was passed upon by this court in the case of *Hammer* v. *Israel, 89 N. J. Eq. 481; 106 Atl. Rep. 125.* In that case, Vice-Chancellor Lane was dealing with the right of a judgment creditor to claim a priority as against partnership assets, and he well says: "I do not think that the court should tolerate a scramble for priority after it has taken control of the assets with a view to ultimate distribution, but before it can be said that the assets are irrevocably within its control * * *." The court adding: "Creditors, however, will be permitted to make levies so that in case of discontinuance, their legal rights will be protected." The learned vice-chancellor thereupon declared the lien of the judgment to be a charge upon the assets, but only up to the time of the entry of a decree and appointment of a receiver, whereupon the lien was to be discharged.

So in the matter *sub judice,* had the attorney-general, as complainant, been unable to establish, after a hearing, any

violations of the law, or had the suit under the Securities act been discontinued, this lien by attachment could, of course, have been protected. But not so after the entry of the final decree herein and my appointment as receiver. See, also, *Doane* v. *Millville Mutual Insurance Co., 45 N. J. Eq. 274,* and its construction by our court of errors and appeals at the bottom of the opinion in the case of *Squire* v. *Princeton Lighting Co., 72 N. J. Eq. 883.*

I have therefore concluded to disallow the claim of the Hudson Dispatch, Incorporated, as well as all other claims filed with me except those which fall squarely within the purview of the statute, and to bar from participation in the fund in my hands all claims based upon such indebtedness as rent, promissory notes and negotiable paper (except such checks as may have been issued under threat of prosecution for fraud), salaries, unpaid balances on account of automobile purchases, printing, legal fees, &c.

Counsel desiring to take exceptions from this finding may do so upon the coming in of my final report and accounting. They will be duly notified of the filing thereof in accordance with the usual practice.